IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRINETTE LARK, BRIA DIAZ, and PRINCE FORD, | No. 16 C 4630 |
| Plaintiffs, | Judge Virginia M. Kendall |
| v. | |
| CITY OF EVANSTON, OFFICER DANIEL F. ROSENBAUM #161, OFFICER BERNHARDT #217, OFFICER JEREMY NIEMAN #154, DET. BRIAN HICKS #251, DET. DAVID CHERREY #127, OFFICER I. REZA #144, OFFICER CARRASCO, SGT. JASON KOHL, SGT. MARK DOBROWOLSKI, and UNKNOWN EVANSTON POLICE OFFICERS, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Trinette Lark ("Lark"), Bria Diaz, ("Diaz"), and Prince Ford ("Ford") filed an eight-count Complaint against the Defendants City of Evanston ("City"), Officer Daniel F. Rosenbaum #161 ("Rosenbaum"), Officer Bernhardt #217 ("Bernhardt"), Officer Jeremy Nieman #154 ("Nieman"), Det. Brian Hicks #251 ("Hicks"), Det. David Cherrey #127 ("Cherrey"), Officer I. Reza #144 ("Reza"), Officer Carrasco ("Carrasco"), Sgt. Jason Kohl ("Kohl"), Sgt. Mark Dobrowolski ("Dobrowolski"), and Unknown Evanston Police Officers. (Dkt. 1.) The Complaint alleges violations of their Fourth Amendment rights against unlawful search and seizure pursuant to 42 U.S.C. § 1983 (Count I), failure to intervene to prevent these constitutional violations (Count II), false imprisonment (Count III), intentional infliction of

1

emotional distress ("IIED") (Count IV),[1] trespass and conversion (Count VI), indemnification (Count VII), and respondeat superior (Count VIII). (*Id.*)

Defendants filed two separate Motions to Dismiss against all counts for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants Rosenbaum, Bernhardt, Nieman, Carrasco, Kohl, Dobrowolski, and the City filed one motion to dismiss. [6] Defendants Cherrey, Reza, Hicks, and the City filed separately. [8] Due to the extensive overlap in facts and legal issues, this Court consolidates the Motions to Dismiss and considers them together. For the following reasons, the Court grants in part and denies in part the Motions to Dismiss.

## BACKGROUND[2]

On April 26, 2015, Plaintiffs Lark, Diaz, and Ford ("Plaintiffs") attended a family barbecue at Lark's home. (Dkt. 1, at 3.) Diaz and Ford are Lark's two adult children. (*Id.*) Diaz was living in the first floor apartment of Lark's home at the time. (*Id.*) Lark also rented out her basement as an apartment unit, which had a separate front and back door that locked and appeared to be a separate apartment. (*Id.*) Chance, the family's two-year-old German Shepard dog, also lived at the residence. (*Id.* at 3, 5.) No official complaints had been filed about Chance. (*Id.* at 6.) He had not bitten anyone, nor had he aggressed or endangered anyone. (*Id.*)

On April 26, around 8:00 p.m., Chance was tied up with his collar and leash to a pole in the basement unit because he had just received a bath and was drying off. (*Id.* at 4.) Around 8:00 p.m., Lark called the Evanston Police Department seeking help to assist in breaking up a

---

[1] Plaintiffs' Reply voluntarily withdraws Count V for negligent infliction of emotional distress, so the Court need not analyze Defendants' Motion to Dismiss regarding this count. (*See* Dkt. 20, at 14.)
[2] In their Motions to Dismiss, Defendants incorporate the Incident Reports that Defendant Officers Rosenbaum, Dobrowolski, and Kohl wrote about the matter at hand. (*See* Dkt. 6, at 3; Dkt. 8, at 3.) Defendants argue that a district court deciding a motion to dismiss may take judicial notice of exhibits that are a matter of public record. *See Palay v. United States*, 349 F.3d 418, 425, n.5 (7th Cir. 2003). However, no cases citing to *Palay,* nor to this Circuit's seminal case on the matter, indicate that they took judicial notice of an incident report. *See Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994). Accordingly, this Court does not take judicial notice of these reports at this stage, and instead construes the facts in the Complaint in the light most favorable to the Plaintiffs, as it must.

verbal altercation that arose between Lark's fiancé, Clarence Cavines ("Cavines"), and Diaz. (*Id.*) Before any officers arrived, Cavines left the premises and the argument was resolved. (*Id.*) When Defendant Officers arrived, Lark, Diaz, and Ford informed the officers that Cavines had left, that the argument was over, and asked them to leave the premises. (*Id.*) The Officers did not leave and instead stayed to question the Plaintiffs about the whereabouts of Cavines. (*Id.*) Plaintiffs informed the two officers interviewing them in the kitchen that Chance was in the basement. (*Id.*)

During these interviews, Detective Cherrey, Detective Hicks, and other Unknown Officers went down the back stairs to the basement. (*Id.* at 4-5.) Plaintiffs did not know that this was occurring and did not give their consent. (*Id.*) No one heard Chance bark or growl during the time that Defendant Officers were present at Lark's residence. (*Id.* at 6.) Detective Cherrey opened the door to the basement with his gun drawn, where Chance was leashed to the pole. (*Id.* at 5.) Cherrey discharged his weapon five times and killed Chance. (*Id.*).

Upstairs, Plaintiffs heard a loud yelp and some banging from the basement. (*Id.* at 4.) Plaintiffs later learned that these were gun shots. (*Id.*) The Defendant Officers who had been interviewing the Plaintiffs in the kitchen immediately directed the Plaintiffs and all others at the barbecue to move to the front porch. (*Id.* at 5.) While on the porch, the Plaintiffs could hear Chance yelping and whining. (*Id.*) They cried and were visibly upset. (*Id.*) Defendant Officers did not tell Plaintiffs what had happened in the basement and would not let the Plaintiffs go down into the basement to assist Chance. (*Id.*) Defendant Officers did not aid Chance or drive him to the animal hospital, where he might have been saved. (*Id.*)

After more than an hour on the front porch, an Evanston police supervisor informed Plaintiffs that Chance had been shot. (*Id.* at 6.) At that point, officers allowed Ford to go down

3

into the basement. (*Id.*) As a result of the Defendant Officers' illegal search and seizure, Plaintiffs suffered emotional anguish, nightmares, anxiety, fear, physical symptoms like headaches and stomach aces, inability to sleep, pain, suffering, embarrassment, pecuniary loss, and the loss of their family dog, Chance. (*Id.* at 7-9.)

At all relevant times, the Defendant Officers acted under the color of law in their official capacities as Evanston Police Officers. (*Id.*)

## LEGAL STANDARD

Defendants move to dismiss all claims pursuant to Rule 12(b)(6). Under Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When discussing the merits of a motion to dismiss, the Court must view the facts in the light most favorable to the non-moving party, and facts alleged must be accepted as true. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)). While factual allegations do not need to be detailed, the plaintiff must put forth facts that when "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). If the facts pled in the complaint permit the Court to reasonably infer the defendant is liable and relief can be granted, it is facially plausible. *Id.*

## DISCUSSION

Defendants move to dismiss Plaintiffs' claims by alleging that no unlawful search occurred, and even if it did, that defendants could not have realistically intervened. Alternatively, Defendants argue that they are entitled to qualified immunity. They also argue that Plaintiffs fail to state a cause of action for false imprisonment, and that in any case, probable cause bars this

4

claim. Further, they allege immunity against the Plaintiffs' claims for IIED and Trespass and Conversion, arising under the Illinois Tort Immunity Act.

### A. Plaintiffs' Claims Pursuant to 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must show: that he was deprived of a constitutional right, or a right established by federal laws, by a person acting under color of law. *See Thurman v. Village of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

#### 1. Count I – Unlawful Search

Plaintiffs allege that Defendants violated their Fourth Amendment rights by searching their premises, including the basement unit, without their consent and after they informed the Defendant Officers that Lark's fiancé Cavines had left the premises. (Dkt. 1, at 6-7.) Defendant Officers Rosenbaum, Bernhardt, Nieman, Carrasco, Kohl, Dobrowolski, Cherrey, Hicks, and Reza argue that no unlawful search occurred, and even if it did, they could not have realistically intervened to prevent it. (Dkt. 6, at 6-8, 10-11; Dkt. 8, at 6-8, 11.) Alternatively, Rosenbaum, Bernhardt, Nieman, Carrasco, Kohl, Dobrowolski, Cherrey, Hicks, and Reza argue that they are entitled to qualified immunity and thus that the claims are barred. (Dkt. 6, at 11; Dkt. 8, at 12.)

The Fourth Amendment prohibits unreasonable searches. U.S. CONST. amend. IV. A warrantless search or seizure is per se unreasonable unless exigent circumstances exist. *U.S. v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000). Those exigent circumstances must be known to the officer at the time of entry. *U.S. v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003). For example, police officers are permitted to make warrantless searches and entries if they "reasonably believe a person within is in need of immediate aid," such as when the police objectively and reasonably fear for the safety of people on the premises. *Id.* at 629-30 (citations omitted). A 911 call can provide probable cause and thus a reasonable basis for a search even if the plaintiff calls about a

domestic dispute and then asks the police to leave, states that she had been unharmed, and insists that there is no need for further inquiry once officers arrived on the scene. *See Hanson v. Dane County*, 608 F.3d 335, 337 (7th Cir. 2010). Officers may also conduct a protective sweep of the premises incident to arrest based on specific and articulable facts where they have an interest in ensuring that a dwelling does not harbor a dangerous person who could launch an attack. *See U.S. v. Burrows*, 48 F.3d 1011, 1015 (7th Cir. 1995).

Here, Defendant Officers arrived at Lark's home after she had called them complaining about a domestic dispute and seeking their help. (Dkt. 1, at 4.) When the officers arrived, Plaintiffs insisted that the dispute was resolved and that the person who was in the argument had left. Much like the plaintiff in *Hanson*, the Plaintiffs also asked the police to leave and insisted that the dispute had been resolved. Nonetheless, under *Hanson*, the nature of the call provided a reasonable basis for the search, even without a warrant. *See Hanson*, 608 F.3d at 337. The officers searched the premises, including the basement unit, without Lark's consent. Construing the facts in the light most favorable to the Plaintiffs, a reasonable factfinder might distinguish the unit as separate from the rest of the dwelling, which could plausibly sever the officers' grounds for their search, despite the Plaintiffs informing officers that Chance was in the basement. (*Id.* at 4.) Further, while the Officers point to Cavines's potential continued presence as a dangerous person who could have been harbored in the dwelling, the reasonability of a protective sweep depends largely on the facts. *See Burrows*, 48 F.3d at 1015. Based on these alleged facts, at this stage the plaintiffs sufficiently plead the violation of a constitutional right. Plaintiffs also allege that the officers responded in their official capacities under the color of state law. (*Id.* at 6.) Plaintiffs therefore state a claim to Section 1983 relief for an unreasonable search.

Even when a violation has been committed under the color of law, officers are entitled to qualified immunity for Section 1983 claims if the law was not "clearly established" such that a reasonable officer would have known not to engage in such conduct. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The validity of certain seizure fact patterns has been clearly established. *See e.g.*, *Maryland v. Buie*, 494 U.S. 325 (1990) (incident to arrest, officers may look in immediately adjoining spaces from which attack could be launched). Yet the question of whether the Fourth Amendment has been violated involves a highly fact-dependent inquiry, so courts must objectively assess whether officers' conduct violates "clearly established" law for the given fact pattern. *See Brosseau*, 543 U.S. at 198; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendant Officers do not argue how the laws governing searches are so unestablished as to grant them immunity from suit under these facts. *See id.* (*See* Dkt. 6, at 11; Dkt. 8, at 12.) Considering the facts in the light most favorable to the Plaintiffs, Defendant Officers have not shown that they are entitled to qualified immunity at this stage. Defendants' Motions to Dismiss for unreasonable search are therefore denied.

### 2. Count I – Unlawful Seizure

Plaintiffs also allege that Defendants violated their Fourth Amendment rights through unreasonable seizure of their persons and their personal property, namely their dog Chance. (Dkt. 1, at 6-7.) Defendants assert that no such seizure occurred according to the meaning of the term under the Fourth Amendment, and if it did, they are nonetheless immune from suit. (Dkt. 6, at 8-11; Dkt. 8, at 8-10, 12.)

A "seizure" under the Fourth Amendment occurs where "a person's freedom of movement is restrained either by means of physical force or show of authority." *Carter v. City of Milwaukee*, 743 F.3d 540, 542 (7th Cir. 2014). To state a claim, a plaintiff must show that a

7

reasonable person would not have believed that he was free to leave in light of the circumstances, and the person actually yields to police authority. *Carter v. Buscher*, 973 F.2d 1328, 1332-33 (7th Cir. 1992); *see United States v. Mendenhall*, 446 U.S. 544, 554 (1980). A number of facts can determine whether a reasonable person would feel free to leave, including the "threatening presence of several officers, the display of a weapon . . . or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* Seizure without probable cause is invalid. *See Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 713 (7th Cir. 2013); *see e.g.*, *Jacobs v. City of Chicago*, 215 F.3d 758, 771-73 (7th Cir. 2000) (three-hour detention and gun to man's head were not reasonable efforts to obtain information).

The Plaintiffs here allege that they were "detained" on the porch for over an hour while the Defendant Officers "refused" to allow them to transport Chance to the hospital or leave their front porch. (*Id.* at 5.) The Plaintiffs also stated that they in fact yielded to authority by remaining on the porch for that time. (*Id.*) They point to "several" officers present – two in the kitchen, and at least Detective Cherrey and Detective Hicks in the basement – and state that Officers responded in a manner that did not show sympathy. (*Id.*) Based on this, a factfinder may be able to find that the Plaintiffs reasonably did not believe that they were free to leave. *See Mendenhall*, 446 U.S. at 554. The Plaintiffs were interviewed by the Defendant Officers for further information, but none was arrested, so it is not clear on the face of the Complaint that Officers had probable cause to seize Plaintiffs. *See Abbott*, 705 F.3d at 714; *Jacobs* 215 F.3d at 771-73. (*Id.* at 4.) Accordingly, Plaintiffs state a claim that they were unreasonably seized.

Plaintiffs further claim that Defendant Officers unreasonably seized their dog, Chance, by shooting and killing him. When considering a claim for unreasonably seized personal property, courts balance the "nature and quality of the intrusion on the individual's Fourth Amendment

interests" against the government's interests. *See e.g.*, *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). In doing so, a number of circuits have held that the unreasonable killing of a companion animal constitutes an invalid "seizure" of personal property. *See e.g.*, *id.* In *Carroll*, the Second Circuit found that an officer shooting the plaintiff's dog was a "severe intrusion" based on "the emotional attachment between a dog and an owner," but also noted that it could be reasonable for an officer to shoot a dog if he thinks it threatens his safety or the safety of his community. *Id.* (internal citations omitted). Similarly, Lark, Diaz, and Ford allege their emotional attachment to Chance as their beloved family dog. (Dkt. 1, at 5.) They also allege that Detective Cherrey shot and killed Chance when the dog did not, and would not have, posed a threat to an officer or others. (*Id.* at 4-6.) Accordingly, Plaintiffs state sufficient facts to allege the unreasonable nature of Chance's death. In regards to both the unreasonable seizure of their persons and their personal property, Plaintiffs allege that the officers responded in their official capacities under the color of state law. (*Id.* at 6.) They therefore state a claim to Section 1983 relief for an unreasonable search under the Fourth Amendment.

The reasonability of a seizure is a highly fact-dependent inquiry. *See Brosseau*, 543 U.S. at 198. Defendant Officers do not argue how the laws governing searches are so unestablished as to grant them immunity from suit under these facts. *See id.* (*See* Dkt. 6, at 11; Dkt. 8, at 12.) Considering the facts in the light most favorable to the Plaintiffs, Defendant Officers have not shown that they are entitled to qualified immunity at this stage. The plaintiffs therefore state a claim for unreasonable seizure pursuant to Section 1983 and Defendant Officers' Motions to Dismiss are denied on these grounds.

### 3. Count II – Failure to Intervene

Plaintiffs further allege that, assuming these Fourth Amendment violations occurred, Defendant Officers could have intervened to stop their fellow officers from committing these violations, but did not. (Dkt. 1, at 7.) Defendants argue that these violations did not occur, but even if they did, they would not have had a realistic opportunity to intervene and in any case are protected from suit through qualified immunity. (Dkt. 6, at 10-11; Dkt. 8, 11-12.)

Officers have a duty to intervene and protect people from the unwarranted force of their fellow officers. *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). A plaintiff can state a claim for failure to intervene under Section 1983 where officers had reason to know that other officers were using excessive force, or where they had a "realistic opportunity" to protect a citizen from the violation of their constitutional rights. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). A situation may present no realistic opportunity to intervene where, for instance, one officer is present. *See e.g.*, *Moore v. City of Chicago*, No. 13-CV-483, 2014 WL 2457630, at *8 (N.D.Ill. May 30, 2014) (plaintiffs dropped claim when dash board camera showed only one officer).

As alleged, Plaintiffs assert that the Defendant Officers were present at the scene and could thus intervene. (Dkt. 20, at 11-12.) Allegations of knowledge need only be general. Fed. R. Civ. P. Rule 9(b); *see Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Here, Plaintiffs point to the multiple officers present and the length of time that they had – at least one hour – to confer and intervene in the allegedly unreasonable search or seizure of Plaintiffs. The Plaintiffs also point to multiple officers present at the basement level when Chance was shot. (*See* Dkt. 1, at 3-6.) Considering that multiple officers were present and had time to confer, it is still plausible at this stage for Plaintiffs to allege Defendants' failure to intervene. In regards to both the unreasonable seizure of their persons and their personal property, Plaintiffs allege that the officers responded in their official capacities under the color of state law. (*Id.* at 6.) They

therefore state a claim to Section 1983 relief for failure to intervene during a violation of the Fourth Amendment.

Once again, Defendant Officers do not point to laws so unclear as to grant them immunity from suit at this stage. *See id.* (*See* Dkt. 6, at 11; Dkt. 8, at 12.) The reasonability of whether officers failed to intervene in an allegedly unlawful search ors eizure is a highly fact-dependent inquiry. *See Brosseau*, 543 U.S. at 198. Looking at the facts in the light most favorable to the Plaintiffs, Defendants' Motions to Dismiss for failure to intervene with a Fourth Amendment violation are denied.

### B. Count III – False Imprisonment

Plaintiffs also allege a number of state claims, including false imprisonment. (Dkt. 1, 7-8.) To proceed with a false imprisonment claim in Illinois, a plaintiff must allege that the defendant restrained or arrested the plaintiff without reasonable grounds to show that the plaintiff was committing an offense. *See e.g.*, *Meerbrey v. Marshall Field and Co., Inc.,* 564 N.E.2d 1222, 1231-32 (Ill. 1999); *Randall v. Lemke*, 726 N.E.2d 183, 186 (Ill. App. Ct. 2000). As Defendants note, probable cause provides an absolute bar to a false imprisonment claim. *See e.g.*, *Mayorov v. United States*, 84 F.Supp.3d 678, 704 (N.D.Ill. 2015) (citing *Poris v. Lake Holiday Prop. Owners Ass'n*, 983 N.E.2d 993, 1007 (Ill. 2013)). (Dkt 6, at 12-15; Dkt. 8, at 12.) However, if the reasons for the restraint are not clear enough from the facts presented to show probable cause, a false imprisonment claim may proceed. *See e.g.*, *Hawkins v. City of Champaign, Ill.*, No. 10-2111, 2011 WL 2446312, at *2-3, 7 (C.D.Ill. May 25, 2011) (allowing an Illinois false imprisonment claim to proceed when record did not clearly show that officers had probable cause to arrest man for domestic violence after his girlfriend called police about her lost car keys).

Here, Plaintiffs allege that the Defendant Officers asked the Plaintiffs to move onto the front porch, and the Plaintiffs did not feel like they could move from there for over an hour. (Dkt. 1, at 6.) Granted, Lark had called the police about a dispute between Cavines and her son, Diaz, one of the plaintiffs in this case. (*Id.* at 3) Yet a factfinder could still find that this does not provide probable cause for restraining Diaz, let alone all of the Plaintiffs. *See e.g.*, *Meerbrey*, 139 Ill.2d at 474 (finding insufficient probable cause and claim stated for false imprisonment despite plaintiff's subsequent arrest). Viewing the facts in a light favorable to the Plaintiffs, the reasons presented for the restraint do not clearly amount to probable cause sufficient to bar the claim. *See e.g.*, *Hawkins*, 2011 WL 2446312, *2-3, 7. Based on these facts, Plaintiffs plausibly allege that the Defendants may have falsely imprisoned them. The claim remains.

**C. Counts IV and VI – Intentional Infliction of Emotional Distress and Trespass and Conversion**

Defendant Officers argue that they are immune from the Plaintiffs' state law tort claims under the Illinois Local Governmental and Governmental Employees Tort Immunity Act. (Dkt. 6, at 14-15; Dkt. 8, at 13.) Illinois' Tort Immunity Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2–202. The Act defines "willful and wanton conduct" as a "course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id.* An officer can have immunity from tort claims where a reasonable officer in the same situation would have also had probable cause to commit the conduct. *See e.g.*, *Estate of Chopek by Fahrforth v. Jarmusz*, 877 F.Supp. 1189, 1197 (N.D.Ill. Feb. 28, 1995) (officer immune from torts under Tort Immunity Act for shooting a 12-year-old boy with cause).

### 1. Intentional Infliction of Emotional Distress

Plaintiffs plausibly state a claim for IIED that rises to the level of "willful and wanton conduct" such that the Tort Immunity Act does not bar suit with regards to Detective Cherrey. (*See* Dkt. 1, 8-9.) To state a claim for IIED in Illinois, the plaintiff must allege that the defendant's conduct was extreme and outrageous, was intended to inflict severe emotional stress or that there was a high probability that it would occur, and that the conduct in fact caused severe emotional distress. *See e.g.*, *Huerta v. Village of Carol Stream*, No. 09-CV-1492, 2009 WL 2747279, at *3 (N.D.Ill. Aug. 27, 2009). Here, Plaintiffs allege that Detective Cherrey fired five ultimately fatal shots at their dog Chance, who had not been known to aggress or threaten others. (*Id.* at 6.) If indeed Chance did not reasonably threaten Detective Cherrey, it is plausible that a factfinder could say that his behavior was extreme and outrageous and had a high probability to inflict severe emotional stress on the Plaintiffs, given the likelihood of their attachment. *See e.g.*, *Huerta*, 2009 WL 2747279, at *3 (IIED sufficiently alleged where officers roughly handled arrestee and used vulgar language). Defendants' conduct could therefore plausibly rise to the level of utter indifference or conscious disregard for the safety of the Plaintiffs or Lark's property. Plaintiffs further note that the conduct caused them severe emotional distress that manifested, for example, in nightmares, headaches, stomach aches, and the inability to sleep. (*Id.* at 7-9.) Accordingly, Plaintiffs sufficiently state an IIED claim at this stage with regards to Detective Cherrey. Plaintiffs do not allege the actions or mental state of other officers that could give rise to a similar claim against them. For that reason, the Plaintiffs state their IIED count against Detective Cherrey and fail to state a claim for all other Defendants.

### 2. Trespass and Conversion

However, Plaintiffs cannot be said to plausibly state a claim for trespass and conversion, regardless of immunity. In Illinois, trespass is an invasion of the exclusive possession and physical condition of the land. *See e.g.*, *City of Evanston v. Texaco*, 19 F.Supp.3d 817, 825-27 (N.D.Ill. 2014). However, officers who enter the land under the authority of law cannot be said to trespass. *See e.g.*, *Caldwell v. City of Chicago*, No. 08-CV-710, 2010 WL 2722207, at *5 (N.D.Ill. Jul. 8, 2010). Given that the Defendant Officers here arrived as a response to a 911 call about a domestic dispute, they entered with the authority to conduct a warrantless search regardless of what ensued. *See Hanson*, 608 F.3d at 337. If officers cannot be said to trespass, plaintiffs also cannot state a claim for conversion. *See e.g.*, *Medscript Pharmacy LLC v. My Script, LLC*, 77 F.Supp.3d 788, 799 (2015) (further requiring plaintiffs to allege defendants' unauthorized control or ownership of the property and demand for its possession). The difference is "largely a matter of degree." *See e.g.*, *Luis v. Smith Partners & Associates, Ltd.*, No. 12-CV-2922, 2012 WL 5077726 (N.D.Ill. Oct. 18, 2012). On these grounds, Plaintiffs do not sufficiently state a claim for trespass or conversion, and this count is dismissed.

### D. Count VIII – Respondeat Superior

The City also moves to dismiss Plaintiffs' respondeat superior claim if the Defendant Officers are not liable for the other torts alleged by the Plaintiffs. (Dkt. 6, at 15; Dkt. 8, at 13.) The theory of respondeat superior is not available under Section 1983, but it is available under Illinois state law. *See Perkins v. Lawson*, 312 F.3d 872, 876 (7th Cir. 2002). Employers can be liable for the negligent or willful acts of their employees if the acts occur in the course of their work. *See e.g.*, *Roehl v. Merrilees*, No. 11-CV-4886, 2012 WL 1192093, at *12-13 (N.D.Ill. Apr. 10, 2012). If a plaintiff sufficiently pleads her state law claim regarding conduct that took place in the course of an employee's professional conduct, she has sufficiently pled her claim to

respondeat superior and the municipality is not immune. *See e.g.*, *Steinbach v. Village of Forest Park*, No. 06-CV-4215, 2009 WL 2605283, at *6 (N.D.Il.. Aug. 25, 2009).

Since Plaintiffs stated facts sufficient to allege IIED against Detective Cherrey, Plaintiffs' corresponding respondeat superior claim remains for this. However, Plaintiffs do not sufficiently alleged trespass and conversion, so this count is dismissed for that claim. (*See* Dkt. 1, at 12.)

## CONCLUSION

For these reasons, pursuant to Rule 12(b)(6), the Court grants the Defendant's Motion to Dismiss Count IV (IIED) with respect to Defendants Rosenbaum, Bernhardt, Nieman, Hicks, Reza, Carrasco, Kohl, Dobrowolski, and Unknown Evanston Police Officers; Count VI (Trespass and Conversion) for all Defendants; and Count VIII (Respondeat Superior) with respect to Plaintiffs' Trespass and Conversion claim. The Court denies the Defendant's Motion to Dismiss for Count I (§ 1983 Unlawful Search and Seizure) and Count II (§ 1983 Failure to Intervene) with respect to Defendant Officers Rosenbaum, Bernhardt, Nieman, Hicks, Cherrey, Reza, Carrasco, Kohl, Dobrowolski, and Unknown Evanston Police Officers; Count III (False Imprisonment); Count IV (IIED) with respect to Cherrey; and Count VIII (Respondeat Superior) with respect to Plaintiffs' IIED claim insofar as Cherrey can be found liable. The Court also grants the Plaintiff's voluntarily withdrawal of Count V (Negligent Infliction of Emotional Distress claim). [6, 8]

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 1/31/2017

15